IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TERRI Q. COLEMAN,            )
       Plaintiff           )
       v.                  )           No. 3:06-cv-168
ARC AUTOMOTIVE, INC.,        )
       Defendant           )

# MEMORANDUM OPINION

This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Plaintiff alleges that her employer, ARC Automotive, Inc. (ARC), discriminated against her on the basis of her sex and race, as well as retaliated against her and subjected her to a hostile work environment. This discriminatory treatment allegedly began as soon as plaintiff was elected to the position of Union President in April 2004. Currently pending is the defendant's motion for summary judgment [Court File #9]. For the reasons that follow, the motion will be granted and this action dismissed.

# I.

## *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Plaintiff is an African-American female who has worked at the ARC factory for 12 years as a general machine operator. ARC manufactures airbag inflator components at its Knoxville plant and employs approximately 400 bargaining unit personnel operating in three shifts per day.

Plaintiff admits that during her tenure of employment with the defendant she was not subjected to anything she thought might be sex or race discrimination, at least until she was elected the Plant President of UNITE! Local 906 in April 2004. Plaintiff was removed as Plant President by the Union in January 2005 based on internal union charges of attempting to oust the UNITE! union in the fall to winter of 2004 in order to replace it with other unions. The Union initially suspended plaintiff as local Union President and subsequently convicted her of disloyalty following an internal union trial. Because of this conviction by the Union, plaintiff was returned to her regular general machine operator position which she had held prior to being elected Union President.

The immediate past president of the Union at the time the plaintiff was elected was an African-American male named Jacob Grant. Plaintiff contends that when she was first introduced as Union President, Robin Whyte, Senior Plant Manager, and Darryl Bunch, an employee of ARC, referred to plaintiff as the "Anointed One," and "this is the new little Jacob," referring to the prior president Jacob Grant. Plaintiff contends that these comments provoked laughter throughout the room, at the plaintiff's expense. Plaintiff further contends that Robin Whyte told Jacob Grant that "they do not need anyone like Terri Coleman as Union President."

Plaintiff contends that between April 2004 and when she was removed from office in January 2005 she was subjected to continuous targeted surveillance of her activities at the instruction of the defendant. She claims that special instructions were given to supervisors and guards to observe and report plaintiff's contact with employees as union representative, especially when the encounter with employees lasted more than two minutes.

At a grievance proceeding, plaintiff and her vice-president were stopped and informed that both individuals could not attend the meeting on behalf of an employee who was facing disciplinary action. When plaintiff questioned this, she was informed that these were orders of Jackie Theg, the Director of Human

Resources for the defendant. Ultimately the plaintiff and the vice-president were allowed to attend the disciplinary hearing.

Plaintiff contends that during her tenure as Union President she was subjected to automatic stops at the guard gates at the direction of management, and that her photograph was inserted in a notebook with employees who had been previously terminated. Plaintiff claims that these actions had not been visited upon any prior Union President.

Plaintiff contends that Jackie Theg on one occasion refused to accept a grievance filed on behalf of the plaintiff because she did not agree with the language. She claims that this was inappropriate and not in the purview of the Human Resources Director.

Plaintiff contends that even after her tenure as Union President ceased, the hostility continued. On one occasion, when plaintiff's pay was less than she had earned, she addressed the discrepancy and was informed that she needed to file a grievance. This was inconsistent with past actions relative to those who had similar pay issues.

Plaintiff claims that her retaliation claim is tied not only to her filing of an EEOC complaint, but also her duties as Union President in assisting employees to avail themselves of Title VII safeguards against discrimination.

With respect to plaintiff's claim that she was stopped and required to check in at the guard shack, the defendant admits that she was when she entered the company buildings on Union business off of her work shift / work site building. It is undisputed that this only occurred during the first shift and that she was never barred entry anywhere in any company facility on any shift and that the waiting time at the guard gate varied from zero to a few minutes. It is undisputed that the purpose of this check-in procedure was to secure compliance with the company's badge policy and collective bargaining agreement requirement that it be notified of any such Union representative's entry. It is also undisputed that the company requested the previous Union President, Jacob Grant, to comply with these same check-in procedures and that he did comply once he was reminded to do so. It is also undisputed that the current Union President, who is a white male, also complies with these rules.

In addition, it is undisputed that plaintiff refused to meet with the Human Resources Manager, Ms. Theg, to receive counseling regarding compliance with such rules.

5

In addition, Human Resources Manager Theg has testified that plaintiff was the object of an increasing level of supervisors' calls to curb her plant floor Union activity abuses. The plant supervisors, at an increasing rate, were complaining to Theg that plaintiff was interrupting their production lines by speaking to employees assertedly about Union business without having obtained permission from the supervisors and without notifying Human Resources of her presence, both of which were required by the collective bargaining agreement.

Plaintiff's refusal to communicate with Theg forced Theg to write UNITE! International Union, the parent union, about plaintiff's conduct. These problems intensified on November 30, 2004, when Robin Whyte, the Vice-President of Production, observed the plaintiff (off-shift) handing out papers to and speaking to two employees adjacent to the production line when they were on paid working time. She called Theg and asked that she cause plaintiff to stop this conduct. Theg immediately responded by going onto the plant floor, escorted plaintiff off the production floor, told her she had abused her privileges (created by the collective bargaining agreement) about which plaintiff had refused to meet and discuss with Theg, and told plaintiff that she was to confine her presence inside the plant facilities to her work shift and her work building. It is undisputed that this is the company's prerogative under the collective bargaining agreement. It is the defendant's position that given the plaintiff's failure to comply with the collective bargaining agreement

requirement of notifying Human Resources that she was entering the plan off-shift, Theg directed the guards to give such notification to Human Resources when the plaintiff entered the plant other than on her work shift. Therefore, defendant concedes that brief "notification" stops were required at the gate. This was additionally required of all off-shift personnel entering the company facility by the company's "badge policy." Plaintiff admits that she was never barred entry to any plant building at any time. The curtailment of plaintiff's Union-presidential activities commenced in November 2004 and lasted until January 2005.

With respect to plaintiff's claims of retaliation, it is undisputed that plaintiff walked off of her work shift and left the plant in the middle of her shift on March 17, 2006, simply declaring to her supervisor "FMLA leave." This occurred in response to her being "shorted" approximately $76 in overtime. Plaintiff had been told by a new third-shift Human Resources assistant, Chris Strange, that she would have a file a "grievance" under the collective bargaining agreement to get it corrected. Ultimately, it was determined that Mr. Strange had given her incorrect information and the $76 error was corrected within three days. After plaintiff walked off the job declaring "FMLA leave," the company requested re-certification of plaintiff's "intermediate-leave FMLA" status, which had previously been provided to her based on a physician's certification of "depression." Plaintiff was unable to provide the requested certification because her psychiatrist refused to provide her

7

with such re-certification. It resulted in a lapse of her FMLA intermittent leave status and hence she received a "non-fault attendance policy" one-half point for the half day she missed after she walked off the job.

It is undisputed that plaintiff was never terminated, suspended, demoted, nor received any other adverse employment action with regard to her job as a general machine operator based on the alleged discrimination. In addition, it is undisputed that her loss of the job of Union President was solely at the instance of her union.

II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp.*

8

*v. Catrett*, 477 U.S. 317 (1986).  In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion.  However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial.  *Catrett*, 477 U.S. at 322.

III.
### *Plaintiff's Disparate Treatment Claim*

To establish a *prima facie* case of gender or racial discrimination under *McDonnell-Douglas Corp. v. Greene*, 411 U.S. 792 (1973), plaintiff must demonstrate that (1) she is a member of a protected class, (2) who was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated

9

differently than similarly-situated male ... employees for the same or similar conduct. *McClain v. Northwest Community Correctional Center Judicial Correctional Board*, 440 F.3d 320, 332 (6th Cir. 2006).

Initially, it is undisputed that the plaintiff is a member of two protected classes in that she is a woman and black. However, adverse treatment is only actionable if it is based on a protected characteristic. Without evidence that the adverse treatment is based on a protected characteristic, plaintiff has not established a triable issue of fact for a *prima facie* case of harassment. *Holman v. Rever Elec. Supply Co.*, 154 Fed. Appx. 501, 504 (7th Cir. 2005). No evidence has been presented by the plaintiff, either direct or indirect, to demonstrate that any of the actions taken by the defendant were taken because of her race or sex. Rather, all of the adverse actions appear to have been taken solely because of her union activities, for which the Union ultimately terminated her Union presidency.

In addition, plaintiff fails to establish a *prima facie* case because she does not establish that she was subjected to an adverse employment action. In order to constitute an adverse employment action for purposes of Title VII, the plaintiff must allege that she has experienced a "materially adverse" change in the terms and conditions of her employment. *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). Such action may include "termination of employment, a demotion

as evidence by decrease is wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). The United States Court of Appeals for the Sixth Circuit has consistently held that *di minimis* employment actions are not materially adverse and do not satisfy the adverse action element. *Brown v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000). None of the actions of which plaintiff complains constitutes an adverse employment action. Her job was completely unaffected, as were her pay, benefits and working conditions at ARC. The effect on her union duties was trivial. She still had the right to enter the plant at any time simply by notifying Human Resources and complying with the other requirements of the collective bargaining agreement. Finally, the delay of a few days in receiving her $76 overtime underpayment falls far short of an adverse employment action.

Plaintiff has come forward with no evidence that she was treated any differently than a similarly situated white male. The previous Union president was a black male and it is undisputed that he was required to comply with the requirements of the collective bargaining agreement with respect to Union activities, and once he was reminded of those requirements he did comply. The present Union president is a white male, and it is undisputed that he does comply with the requirements of the collective bargaining agreement. Plaintiff has show no evidence

11

of any similarly situated "comparator" who received more favorable treatment than she received. Quite simply, there is no evidence of any comparator who was accused of engaging in the same type of Union activities which plaintiff did. In order to be considered as similarly situated, individuals with whom plaintiff seeks a comparison "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 479 (6th Cir. 2003). Without evidence of any comparator to compare her treatment to, plaintiff also fails to establish a *prima facie* case with respect to this element.

## IV.
### *Plaintiff's Retaliation Claim*

To establish a *prima facie* case of retaliation, the plaintiff must demonstrate by a preponderance of the evidence that (1) the employee engaged in protected activity; (2) the employer knew that she engaged in this protected activity; (3) the employer took an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action exists. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). The United States Supreme Court has recently held that when we consider whether there was an

adverse employment action in the context of a retaliation claim, we must ask whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting the charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 126 S.Ct. 2405, 2415 (2006).

Plaintiff did not file her EEOC charge in this case until September 2005, approximately eight months after her Union presidency ended. The only post-presidency allegation concerned the payroll shortage of $76 for three days and the one-half attendance point she accrued when she walked off the job and failed to obtain a re-certification from her physician. Initially, there is no nexus between the filing of the EEOC complaint or the plaintiff's actions taken as President of the Union in either of these events. Nor do either of these events rise to the level of an adverse employment action which might support a retaliation claim. Defendant is also entitled to summary judgment on the retaliation claim.

## V.

### *Plaintiff's Hostile Work Environment Claim*

The courts have never held that any workplace harassment necessarily rises to the level of discriminatory changes in the terms and conditions of employment. Rather, the United States Supreme Court has noted that

> [t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behaviors so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview."

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Faragher v. City of Boca Ratan*, 524 U.S. 775 (1998). In the instant case, the conduct of which the plaintiff complains does not rise to changes in the terms or conditions of plaintiff's employment. In fact, there was virtually no change in the terms or conditions of plaintiff's employment. The defendant is also entitled to summary judgment on the harassment claim.

VI.

*__Conclusion__*

In light of the foregoing, defendant's motion for summary judgment [Court File #9] will be granted and this action dismissed.

Order accordingly.

              ***s/ James H. Jarvis***
              UNITED STATES DISTRICT JUDGE